**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

JUAN BENAVIDEZ,                          )
                                         )
          Plaintiff,                     )
                                         )
v.                                       )          Case No. CIV-15-495-M
                                         )
CAROLYN COLVIN,                          )
Acting Commissioner of the               )
Social Security Administration,          )
                                         )
          Defendant.                     )

## REPORT AND RECOMMENDATION

Plaintiff, Juan Benavidez, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant, Carolyn Colvin, Acting Commissioner of the Social Security Administration, denying Plaintiff's application for supplemental security income benefits (SSI).  United States District Judge Vicki Miles-LaGrange referred this matter for proposed findings and recommendations.  *See* 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

## I.    Procedural History

On January 25, 2011, Plaintiff protectively filed applications for disability insurance benefits (DIB) under Title II and for SSI under Title XVI alleging a disability onset date of January 31, 2008.  *See* Administrative Record (AR) [Doc. No. 10] 8, 67, 192.  The Social Security Administration (SSA) denied Plaintiff's applications both initially and on reconsideration.  AR 8, 67, 192-93.  Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision June 22, 2012.  AR 8, 64-76.  Plaintiff made no further appeal of that decision.  AR 8.

On August 6, 2012, Plaintiff filed a second application for SSI, this time alleging his disability began June 22, 2012, the day the ALJ ruled on Plaintiff's original application. AR 8, 166-71. SSA denied Plaintiff's second application initially and upon reconsideration. AR 8, 106, 110-13, 114-16. After a hearing November 6, 2013, AR 27-63, a different ALJ also issued an unfavorable decision. AR 5-20. The Appeals Council denied Plaintiff's request for review, and the decision of the ALJ became the final decision of the Commissioner. AR 1-3. Plaintiff seeks judicial review of that decision.

## II.    The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluation process); *see also* 20 C.F.R. § 416.920. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since August 6, 2012, the protective filing date of his application. AR 10. At step two, the ALJ found Plaintiff to have the following severe impairments: residual back pain; status post ALIF (anterior lumbar interbody fusion), L5 foraminotomy, re-fusion, and hardware removal; diabetes mellitus; hypertension; affective disorder, depressed type; and rule out borderline intellectual functioning. *Id.* At step three, the ALJ concluded Plaintiff's impairments neither meet nor medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. AR 12-15. The ALJ next determined Plaintiff's residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to perform light exertion work as defined in 20 CFR 416.967(b) except with the following non-exertional limitations: the claimant can occasionally (occasionally is cumulatively 1/3 or less of an 8 hour day) lift and/or carry (including upward pulling) 20 pounds; frequently (frequently is cumulatively more than 1/3 up to 2/3 of an 8 hour day) lift and/or carry (including upward pulling) 10 pounds; Stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; Sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; push and/or pull

(including operation of hand and/or foot controls) is unlimited, other than as shown about for lift and/or carry; the claimant can occasionally stoop. The claimant can perform simple and some complex tasks with routine supervision. The claimant can relate to supervisors and peers on a superficial work basis. The claimant can adapt to a work situation. The claimant has no other physical or mental restrictions or limitations of any kind.

AR 15-16.

The ALJ decided this case at step five of the analysis.[1] AR 18-19. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience, as well as the testimony of the vocational expert (VE), to determine if work exists in significant numbers in the national economy that a claimant can perform. *See William v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988); 42 U.S.C. § 423(d)(2)(A). The Commissioner bears the burden to present sufficient evidence to support a "not disabled" finding at step five of the review process. *See Emory v. Sullivan*, 936 F.2d 1092, 1094 (10th Cir. 1991). Here, the ALJ determined there are jobs existing in significant numbers in the national economy that Plaintiff can perform including the representative "light, unskilled" jobs of small parts assembler, price marker, and shirt presser, and the representative "sedentary, unskilled" jobs of small parts assembler, machine feeder, and cuff folder. AR 19. After concluding the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles (DOT) as required by SSR 00-4p, the ALJ determined Plaintiff is not disabled within the meaning of the Social Security Act. AR 19-20.

III.    <u>Plaintiff's Claims</u>

Plaintiff presents three nominally-distinct propositions of error. First, Plaintiff insists the ALJ's RFC "is flawed because it does not contain work-related limitations for all of the severe impairments, nor does it incorporate the great weight physicians [sic] impairments." *See*

---

[1] Citing 20 CFR 416.965, the ALJ found that no analysis was required at step four of the sequential evaluation and proceeded directly to step five. AR 18.

Plaintiff's Brief in Chief (Plaintiff's Brief) [Doc. No. 12] at pp. 2-3. Next, Plaintiff claims the ALJ "did not conduct the required function-by-function assessment of [his] impairments or address the maximum amount of each work-related activity he could perform." *Id.* at p. 11. As a final matter, Plaintiff argues "[t]he ALJ erred in giving the agency doctors 'great' weight because the agency doctors never properly expressed any *work-related limitation* in their RFC for the cognitive impairment that the ALJ found severe." *Id.* at pp. 12-13 (emphasis in original).

## IV.    <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). The Court neither reweighs the evidence nor substitutes its judgment for that of the ALJ; rather, the Court reviews the administrative record to determine if the ALJ applied the correct legal standard and substantial evidence supports the ALJ's decision. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted).

## V.  <u>Analysis</u>

### A.  The ALJ Reasonably Evaluated Plaintiff's Complaints of Mental Disability and Substantial Evidence Supports the ALJ's RFC

Plaintiff's "primary argument" is that the ALJ's RFC is flawed because it does not express Plaintiff's "nonexertional capacity . . . in terms of work-related functions" as required by Social Security Ruling (SSR) 96-8p.  *See* Plaintiff's Brief at p. 3 (*citing* SSR 96-8p, 1996 WL 374184 at *6 (July 2, 1996)).  Plaintiff charges the ALJ failed to incorporate in the RFC "the great weight physicians [sic] impairments" regarding his nonexertional capacity, including "limitations from [his] pain, mental impairment and moderate impairment in concentration, persistence and pace."  *Id.*  Indeed, Plaintiff insists the RFC is "devoid of any limitation whatsoever" for his mental impairments because the ALJ "confused mental work-related limitations with skill level when he expressed it as the ability to perform simple and some complex work . . . ."  *Id.* at p. 4.

Concerning Plaintiff's mental impairments, the ALJ found at step two of the sequential evaluation that Plaintiff's severe impairments include "affective disorder, depressed type; and rule out borderline intellectual functioning."  AR 10.  At step three, the ALJ concluded Plaintiff has mild restrictions both in activities of daily living and in maintaining social functioning; moderate difficulties with regard to concentration, persistence, or pace; and no episodes of decompensation.  AR 14.  Accordingly, the ALJ found "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 [affective disorders] and 12.05 [intellectual disability]." [2]  AR 14, 86.  *See* 20 C.F.R. Part 404, Subpart P, App. 1; Listings 12.01(B) (the "paragraph B criteria"), 12.05(D).

_____

[2] To qualify as disabling at step three, a claimant's depression or intellectual disability must be severe enough to result in marked restrictions in two of the following three areas: (1) activities of

Plaintiff argues the ALJ erred by failing to incorporate into the RFC his step-three finding that Plaintiff has moderate difficulties maintaining concentration, persistence, or pace. *See* Plaintiff's Brief at pp. 9-10. "However, the law is clearly settled that findings as to concentration, persistence, or pace at steps two and three do not automatically apply at step four when the ALJ is formulating a claimant's RFC." *White v. Colvin*, No. 15-CV-0027-CVE-FHM, 2016 WL 1175492 at *5 (N.D. Okla. March 23, 2016) (slip op.); *see Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."); *Suttles v. Colvin*, 543 F. App'x 824, 826-27 (10th Cir. Oct. 31, 2013) (unpublished) ("[M]ental limitations noted in the threshold inquiry at steps two and three do not apply at later steps."); *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. Apr. 10, 2013) (unpublished) ("[T]he ALJ's finding of 'moderate difficulties' in social functioning in the 'paragraph B' criteria does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."). Rather, "[t]he social security ruling on assessing a claimant's RFC cautions that '[t]he adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.'" *Vigil*, 805 F.3d at 1203, *quoting* SSR 96-8, 1996 WL 374184 at *4 (July 2, 1996).

---

daily living; (2) maintaining social functioning; or (3) maintaining concentration, persistence, or pace; or in marked restrictions in one of those three areas plus repeated episodes of extended-duration decompensation. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1; Listing 12.01(B); Listing 12.05(D). Here, the ALJ found Plaintiff to have only mild to moderate limitations and no episodes of decompensation.

What is more, none of the cases Plaintiff cites hold that an ALJ must include in the RFC step-three findings regarding concentration, persistence, or pace. Rather, they stand for the well-accepted proposition that an ALJ must consider evidence of a claimant's mental impairments when formulating appropriate hypothetical inquiries for the VE because merely restricting a claimant to simple or unskilled work, without more, may be insufficient to convey such limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1289-90 (10th Cir. 2012) (holding ALJ's dispositive hypothetical to VE fatally defective where it conveyed only one of claimant's extreme functional limitations and failed to relate the restriction to simple, unskilled work that the ALJ included in the RFC); *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (holding testimony elicited by hypothetical questions that failed to relate with precision claimant's mental impairments cannot constitute substantial evidence to support the Commissioner's decision); *Jaramillo v. Colvin*, 576 F. App'x 870, 875 (10th Cir. 2014) (unpublished) (holding "the limitation to simple, routine, repetitive and unskilled tasks the ALJ included in his hypothetical to the VE did not clearly relate the moderate impairments" in carrying out instructions, attending and concentrating, and working without supervision, found by the examining psychiatrist on whose opinion the ALJ placed great weight); *Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) (unpublished) (holding ALJ's hypothetical asking VE to identify "simple work" or "unskilled jobs" was insufficient to address claimant's mental limitations); *Wayland v. Chater*, 76 F.3d 394, 1996 WL 50459 *2 (10th Cir. Feb. 7, 1996) (unpublished) (holding ALJ's failure to include in hypothetical any mental limitations beyond restricting claimant to unskilled work was insufficient to account for claimant's particular cognitive and emotional impairments and thus VE's responses were not supported by substantial evidence); *but see Vigil*, 805 F.3d at 1204 (reasoning that because unskilled work generally requires only: "(1) '[u]nderstanding,

remembering, and carrying out simple instructions'; (2) '[m]aking judgments that are commensurate with the functions of unskilled work – i.e., simple work-related decisions'; (3) '[r]esponding appropriately to supervision, co-workers and usual work situations'; and (4) '[d]ealing with changes in a routine work setting,'" the ALJ's RFC determination limiting claimant to unskilled work adequately accounted for his moderate limitations in concentration, persistence, and pace) (*quoting* SSR 96-8, 1996 WL 374184 at *9 (July 2, 1996)); *Jaramillo*, 576 F. App'x at 875 ("[A] limitation to unskilled work or, as the ALJ phrased it here, 'unskilled tasks,' could be used as shorthand for the specific mental abilities described in SSR 85–15.").

Here, unlike in the cases cited by Plaintiff, the ALJ incorporated into the hypotheticals he posed to the VE the precise work-related limitations Plaintiff would likely experience as a result of his mental impairments. The ALJ accomplished this by first asking the VE to review the Mental Residual Functional Capacity Assessments (MRFCA)[3] of two non-examining, non-treating state agency doctors – Deborah Hartley, Ph.D., and Sally Varghese, M.D. – to whose opinions the ALJ assigned great weight. AR 17-18, 55, 58-59. Drs. Hartley and Varghese each concluded Plaintiff has moderate limitations in the following abilities: to understand and remember detailed instructions; to carry out detailed instructions; and to interact appropriately with the general public.[4] AR 90, 102-03. These are examples of work-related mental functions. *See* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by

---

[3] The questions that comprise the MRFCA, which are expressly designed to "help determine the individual's ability to perform sustained work activities," address sixteen different categories of mental functioning. AR 89, 102.

[4] At one point, Plaintiff asserts "[t]he agency doctors wrote that [he] was *markedly limited* in the ability to understand, remember and carry out *detailed* instructions," and twice directs the Court to AR 897 in support. *See* Plaintiff's Brief at p. 9 (emphasis in original). The Administrative Record ends at page 326, however, and the Court is unaware of any record evidence to this effect.

competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.")

Next, the ALJ asked the VE to assume the limitations the doctors identified in the MRFCA's were "true and correct and believable" and that the ALJ had "adopted [them] as the RFC in this case." AR 57, 55-60 (referring the VE to Exhs. B3A at pp. 7-10 [AR 88-91], B4A at pp. 8-11 [AR 100-103]). The ALJ then asked the VE, in light of these restrictions, to identify both "light, unskilled" and "sedentary, unskilled" jobs Plaintiff is capable of performing that exist in significant numbers in the national economy. AR 57-60. In so doing, the ALJ did not relay Plaintiff's mental impairments to the VE merely by limiting Plaintiff to simple, unskilled, or routine work. Rather, the ALJ communicated Plaintiff's mental impairments to the VE in terms of the moderate impact they would have on the three specific work-related functions identified by Drs. Hartley and Varghese: understanding and remembering detailed instructions; carrying out detailed instructions; and interacting appropriately with the general public. Thus, the ALJ's hypothetical inquiries conveyed Plaintiff's mental impairments to the VE with sufficient precision, the VE's responses thereto constitute substantial evidence to support the Commissioner's decision, and Plaintiff fails to establish reversible error.[5]

---

[5] Within his first charge of error, Plaintiff also argues he "cannot perform the reading requirements of any of these three jobs at all." *See* Plaintiff's Brief at p. 8. The VE identified six jobs, however, three in the "light, unskilled" category and three in the "sedentary, unskilled" category. AR 57-58. Plaintiff fails to inform the Court which of these jobs requires the ability to read and at what level. Moreover, although Plaintiff testified, "I just got an eighth grade education. I can't copy hand, I can't read that well and I can't write that well," AR 31, on his August 28, 2012 Function Report, Plaintiff declared, "I can follow [written instructions] pretty good especially if it's a recipe." AR 208. Thus, the ALJ may not have found Plaintiff's testimony regarding his limited reading ability to be entirely credible, and Plaintiff does not challenge the ALJ's credibility assessment herein.

**B.    The ALJ Conducted the Requisite Function-by-Function Analysis of Plaintiff's Mental Impairments**

Plaintiff next argues "[t]he ALJ did not conduct the required function-by-function assessment of [Plaintiff's] impairments or address the maximum amount of each work-related activity he could perform."   In support of this claim of error, Plaintiff cites *Alexander v. Barnhart*, No. 02-5046, 74 F. App'x 23, 2003 WL 22087496, at *28 (10th Cir. Sept. 2, 2003) (unpublished), in which the Tenth Circuit held substantial evidence did not support the RFC where the ALJ limited the claimant to "light" work without separately considering each of the seven strength demands as required by agency regulations.[6]

The RFC the ALJ formulated refutes Plaintiff's assertion on its face.  Although the ALJ does state in the RFC that Plaintiff can "perform light exertion work," the ALJ follows this exertional-category designation with a function-by-function assessment of Plaintiff's capacity to perform each of the seven strength demands:

> [T]he claimant has the residual functional capacity to perform light exertion work as defined in 20 CFR 416.967(b) except with the following non-exertional limitations: the claimant can occasionally (occasionally is cumulatively 1/3 or less of an 8 hour day) lift and/or carry (including upward pulling) 20 pounds; frequently (frequently is cumulatively more than 1/3 up to 2/3 of an 8 hour day) lift and/or carry (including upward pulling) 10 pounds; Stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; Sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; push and/or pull (including operation of hand and/or foot controls) is unlimited, other than as shown about for lift and/or carry; the claimant can occasionally stoop.

---

[6] SSR 96-8p provides that "[a]t step 4 of the sequential evaluation process, the RFC must *not* be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it."   SSR 96-8p, 1996 WL 374184 at *3 (July 2, 1996) (emphasis added).  Although the RFC must be expressed in terms of the exertional categories at step five, the initial assessment of a claimant's ability to perform specific work-related functions remains critical "in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level."  *Id.*

AR 15.  Hence, the ALJ did not restrict Plaintiff to light work without assessing his capacity to perform each to the seven strength demands as required by SSR 96-8p.

Plaintiff further argues the "ALJ also erred by failing in 'describing how the evidence supports *each* conclusion [in the RFC], citing *specific* medical facts . . . and nonmedical evidence.'"  *See* Plaintiff's Brief at p. 11, *quoting* SSR 96-8p, 1996 WL 374184, at *7 (emphasis added by Plaintiff).  Plaintiff insists that "[w]hile the ALJ generically discussed evidence in connection with his RFC, it is unclear what particular evidence and medical findings he relied on to support each of his findings in the RFC."  *Id.*, *citing* AR 20-22.

This charge of error is again belied by the text of the ALJ's decision.  In the pages that follow his statement of the RFC, the ALJ engages in a narrative review of both the treatment notes and consultative examination of Dr. Akram Abraham, M.D., Plaintiff's treating physician. AR 16-17.  The ALJ also discusses the opinions of Drs. Varghese and Hartley, AR 17-18, who each independently examined the evidence regarding Plaintiff's mental impairments, *see* Section A, supra at pp. 7-8, and the opinions of state agency medical consultants Dr. Luther Woodcock, M.D. and Dr. Amita Hegde, M.D., who each independently examined the evidence regarding Plaintiff's physical impairments and agreed Plaintiff has the physical ability to perform light exertion work with occasional stooping.  AR 18.  In any event, Plaintiff fails to cite to any evidence he alleges the ALJ omitted in his assessment of the RFC.

What is more, "there is a distinction between what an adjudicator must *consider* and what the adjudicator must *explain* in the disability determination or decision . . . ."  SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006) (emphasis added); *see Mounts v. Astrue*, 479 F. App'x 860, 2012 WL 1609056 at *6 (10th Cir. May 9, 2012) ("[I]t is not necessary for the ALJ to address each factor expressly or at length") (unpublished); *Luttrell v. Astrue*, 453 F. App'x 786, 792,

2011 WL 6739432 (10th Cir. Dec. 23, 2011) at *4 ("As this court has made clear, the ALJ need not discuss every piece of evidence in the record; it is enough if the ALJ discusses the evidence supporting his decision, 'the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence he rejects.'") (unpublished) (*quoting Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)). Indeed, an ALJ is "not required to cite to specific medical evidence in the record" where his decision "includes a thorough discussion of the medical evidence, including an accurate summary of the treatment notes . . . sufficient to allow the reviewer to follow the explanation." *Baker v. Colvin*, No. CIV-13-1152-W, 2014 WL 7404081 at *5 (W.D. Okla. Dec. 30, 2014) (unpublished). Such is the case here. The ALJ's decision is sufficiently specific to explain the relevant, record medical evidence on which he relied in formulating the RFC, and Plaintiff fails to establish reversible error.

### C. Plaintiff Points to No Inconsistencies Between the Medical Opinion Evidence and the RFC

Plaintiff's third and final charge of error is a catch-all. In it, he revisits his earlier arguments regarding the necessity of expressing a claimant's impairments in the RFC "in terms of work-related functions." *See* Plaintiff's Brief at 12-13. The Court already has addressed and rejected this contention of error in Section A, *supra*. Plaintiff also asserts that "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted," and that SSR 96-8p requires the ALJ to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See* Plaintiff's Brief at 12, *quoting* SSR 96-8p, 1996 WL 374184 at *3 (July 2, 1996). Plaintiff fails to point to a single instance of such a conflict, inconsistency, or ambiguity between the record medical evidence and the RFC, however. *See id.* at 12-13. The ALJ applied the correct legal standard in formulating the RFC and substantial evidence supports his decision.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Any objection must be filed with the Clerk of the District Court by June 3rd, 2016. Failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 19th day of May, 2016.

BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE